IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-CR-00230-GKF |
| TORRANCE LAMONT WILLIAMS, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the court on the Opposed Motion to Dismiss Indictment [Doc. 19] of defendant Torrance Lamont Williams.  For the reasons set forth below, the motion is denied.

**Background**

On July 10, 2023, a grand jury returned an Indictment charging Mr. Williams with one count of Felon in Possession of a Firearm and Ammunition pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and one count of Possession of an Unregistered Rifle Having a Barrel of Less Than 16 Inches in Length pursuant to 26 U.S.C. §§ 5861(d) and 5871.  [Doc. 2].   Trial of this matter is scheduled for October 16, 2023.  [Doc. 14].

Mr. Williams seeks to dismiss the Indictment, arguing that both 18 U.S.C. § 922(g)(1) and 26 U.S.C. § 5861(d) are unconstitutional in the wake of the United States Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. —, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).  [Doc. 19].   The government has responded in opposition [Doc. 23] and, with the court's leave, Mr. Williams filed a reply [Doc. 26].

**Analysis**

As previously stated, Mr. Williams challenges the constitutionality of both 18 U.S.C. §

922(g)(1) and 26 U.S.C. § 5861(d).   The court separately considers each section. However, prior to considering the parties' arguments, it is necessary to understand the *Bruen* decision.

   A.  *New York State Rifle & Pistol Association, Inc. v. Bruen*

In *Bruen*, the Court considered a constitutional challenge to New York's firearm licensing regime, which required a person seeking to carry a firearm outside of the home to demonstrate that "proper cause exists" to issue the license.   *Bruen*, 142 S. Ct. 2122-23 (citing N.Y. Penal Law Ann. § 400.00).   The statute did not define "proper cause," but New York courts interpreted the standard to require the applicant to "demonstrate a special need for self-protection distinguishable from that of the general community."   *Bruen*, 142 S. Ct. at 2123 (citing *In re Klenosky v. N.Y.C. Police Dep't,* 428 N.Y.S.2d 256, 257 (1980)).

In considering the constitutionality of the New York licensing regime, the Court first cited its prior holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), that "the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense," and noted that, "[i]n the years since, the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny."   *Bruen,* 142 S. Ct. at 2125.   Pursuant to that framework, at the first step, the government bore the burden to "justify its regulation by 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.'"   *Id.* at 2126 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). If "the regulated conduct f[ell] beyond the Amendment's original scope," then the analysis ended. *Bruen*, 142 S. Ct. at 2126.   However, if the historical evidence was inconclusive or the regulated conduct was not categorically excluded, courts proceeded to the second step, which generally involved analysis of "how close the law comes to the core of the Second Amendment right and the

severity of the law's burden on that right." *Id.* (quoting *Kanter*, 919 F.3d at 441). If a "core" Second Amendment right was burdened, courts applied "strict scrutiny," requiring the government to prove the law "[was] narrowly tailored to achieve a compelling governmental interest." *Bruen*, 142 S. Ct. at 2126. "Otherwise, they appl[ied] intermediate scrutiny and consider[ed] whether the Government c[ould] show that the regulation [was] 'substantially related to the achievement of an important governmental interest.'" *Bruen,* 142 S. Ct. at 2126 (quoting *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012)).

In rejecting the two-part means-ends test, the Court characterized it as "one step too many." *Bruen*, 142 S. Ct. at 2127. The Court noted that, while step one "is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history," the second step was inconsistent with its prior decisions in *Heller* and *McDonald*. *Bruen*, 142 S. Ct. at 2127. Instead, the Court articulated the relevant inquiry succinctly: "[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* The Court went on to expound on the analysis, stating,

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129-30. Thus, the test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131.

B.     18 U.S.C. § 922(g)(1)

Count One of the Indictment charges Mr. Williams with a violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) provides as follows: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

In the motion, Mr. Williams argues that § 922(g)(1) is (1) facially unconstitutional and (2) unconstitutional as applied to him because he was previously convicted of non-violent felonies. In the briefing, the parties rely heavily on *Bruen* and engage in an analysis of whether the section "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. However, after briefing had closed in this matter, the U.S. Court of Appeals for the Tenth Circuit issued a published decision in *Vincent v. Garland*, — F.4th —, 2023 WL 5988299 (10th Cir. Sept. 15, 2023). Therein, the circuit considered whether *Bruen* has overruled its earlier precedential opinion, *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), wherein the circuit had upheld the constitutionality of § 922(g)(1). *Vincent,* 2023 WL 5988299, at *1; *see also McCane*, 573 F.3d at 1047. The circuit reasoned it was obligated to apply its prior precedent and could not "jettison *McCane*" unless *Bruen* "indisputably and pellucidly abrogated" it. *Vincent,* 2023 WL 5988299, at *2. Noting that six of the nine Justices had reaffirmed language in *Heller* that it was not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons" and, further, that the Court had apparently approved of "shall-issue" regimes and background checks, the circuit concluded that *Bruen* "did not indisputably and pellucidly abrogate our precedential opinion in *McCane*." *Vincent,* 2023 WL 5988299, at **3-4. Thus, *Bruen* did not overrule *McCane*. *Vincent,* 2023 WL 5988299, at *4.

As previously stated, "*McCane* squarely upheld the constitutionality of the ban on felons' possession of firearms." *Vincent,* 2023 WL 5988299, at *4; *see also McCane,* 573 F.3d at 1047 (rejecting arguments challenging the constitutionality of § 922(g)). The court is bound to apply this holding, and therefore § 922(g)(1) is not facially unconstitutional. *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit.").

Further, as recognized by the Tenth Circuit in *Vincent,* "[u]nder *McCane,* we have no basis to draw constitutional distinctions based on the type of felony involved." *Vincent,* 2023 WL 5988299, at *4. Rather, "*McCane* . . . upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm." *Id.; see also In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) ("We have already rejected the notion that *Heller* mandates an individualized inquiry concerning felons pursuant to § 922(g)(1)."). Pursuant to *McCane* and *Vincent,* § 922(g)(1) is not unconstitutional as applied to any convicted felon. Thus, § 922(g)(1) is not unconstitutional as applied to Mr. Williams, and Mr. Williams's motion to dismiss Count One of the Indictment must be denied.

C.   26 U.S.C. § 5861(d)

Count Two of the Indictment charges Mr. Williams with possession of a rifle having a barrel of less than 16 inches in length in violation of 26 U.S.C. § 5861(d). Section 5861(d), which is part of the National Firearms Act, states: "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Firearms that must be registered include "a rifle having a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(3).

As previously stated, pursuant to *Bruen,* the court first considers whether the Second

Amendment's plain text covers Mr. Williams's conduct. If so, "the Constitution presumptively protects" it. *Bruen,* 142 S. Ct. at 2129-30. Mr. Williams argues that possession of a short-barreled rifle falls within the plain text of the Second Amendment. In opposition, the government argues that short-barreled rifles are not protected by the Second Amendment.

Prior to *Bruen*, in *Heller*, the Supreme Court recognized, "[l]ike most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry *any weapon whatsoever* in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626 (emphasis added). Rather, in *Heller,* the Court interpreted its earlier decision in *United States v. Miller*, 307 U.S. 174 (1939), to recognize "the Second Amendment right, whatever its nature, extends only to *certain types of weapons*," *id.* at 623 (emphasis added), and articulated an "important limitation on the right to keep and carry arms[:] . . . that the sorts of weapons protected were those 'in common use at the time.'" *Id.* at 627 (quoting *Miller,* 307 U.S. at 179). That is, the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller,* 554 U.S. at 625. The Court reasoned the "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *id.* at 627 (quoting 4 William Blackstone, *Commentaries*, *148-49 (1769)), and in "accord[] with the historical understanding of the scope of the right." *Heller*, 554 U.S. at 625.

Subsequent to *Heller*, but prior to *Bruen*, the Tenth Circuit considered whether section 5861(d)'s prohibition of possession of unregistered short-barreled rifles comported with the Second Amendment. *See United States v. Cox,* 906 F.3d 1170 (10th Cir. 2018). The circuit began by recognizing "*Heller*'s conclusion that short-barreled shotguns—close analogues to short-

6

barreled rifles—belong in that category of weapons not typically possessed by law-abiding citizens for lawful purposes and, therefore, not protected by the Second Amendment." *Id.* at 1185. Finding "no meaningful distinction" between short-barreled shotguns and short-barreled rifles, the court "t[ook] [its] cue from *Heller* and conclude[d] that the possession of short-barreled rifles falls outside the Second Amendment's guarantee." *Id.* at 1186

The Tenth Circuit has not overruled *Cox*. Nevertheless, Mr. Williams argues that "the *Cox* rationale fails in light of *Bruen*," focusing on *Cox*'s application of the "means-ends" test and the court's truncated analysis. [Doc. 19, p. 7]. However, although *Bruen* ultimately rejected the "means-end" test, it characterized the first step—whether the regulated conduct falls within the scope of the Second Amendment's protection—as "broadly consistent with *Heller*." *Bruen,* 142 S. Ct. at 2127. Thus, the standard for applying the Second Amendment as articulated by *Bruen* first requires the court to determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-30. If so, "the Constitution presumptively protects that conduct" and, only then, "[t]he government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

Mr. Williams is correct that, in *Cox*, contrary to *Bruen*, the Tenth Circuit agreed that a two-pronged approach "provide[d] a workable means of evaluating . . . Second Amendment challenges." *Cox,* 906 F.3d at 1185. That approach required the court to first consider whether "the challenged law burden[ed] conduct within the scope of the Second Amendment's guarantee" and, if so, then "evaluate the law under some form of means-end scrutiny." *Id.* However, as discussed above, the court ultimately concluded that short-barreled rifles fell outside the scope of the Second Amendment's protection and therefore did not "test the challenged regulations under any form of means-end scrutiny." *Id*. at 1187. Accordingly, because the Tenth Circuit

7

considered only the first prong—whether short-barreled rifles fell within the scope of the Second Amendment's protection—*Cox* is "broadly consistent" with *Heller* and *Bruen*. *Bruen,* 142 S. Ct. at 2127. Thus, this court is bound to follow *Cox*.

Further, nothing in *Bruen* indicates that the Court intended to broaden the scope of the Second Amendment's protection. Rather, the Court stated it was applying "the test that [it] set forth in *Heller*." *Bruen*, 142 S. Ct. at 2131. Significantly, in *Bruen*, it was undisputed that the weapon at issue, a handgun, was "'in common use' today for self-defense" and therefore presumptively protected by the Second Amendment. *Bruen,* 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 627). Further, Justice Kavannaugh, joined by Chief Justice Roberts, wrote separately to recognize that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations" and cited *Heller*, for its recognition that "the sorts of weapons protected [are] those in common use at the time," a limitation "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Likewise, Justice Alito stated that nothing in *Bruen* "decide[s] anything about *the kinds* of weapons that people may possess." *Bruen,* 142 S. Ct. at 2157 (Alito, J., concurring) (emphasis added). As recognized by other district courts,

> [w]hatever changes N.Y. State Rifle v. Bruen brought to the Second Amendment landscape, inclusion of dangerous and unusual weapons in the Second Amendment right isn't one such change. Possession of dangerous and unusual weapons was excluded from the Second Amendment right before N.Y. State Rifle v. Bruen, and their exclusion continues after N.Y. State Rifle v. Bruen.

*United States v. Sredl*, No. 22-CR-71-RLM-MGG, 2023 WL 3597715, at *3 (N.D. Ind. May 23, 2023); *see also DeWilde v. United States*, No. 23-CV-00003-SWS, 2023 WL 4884582, at *7 (D. Wyo. July 17, 2023), *appeal filed,* No. No. 23-8054 (10th Cir. Aug. 1, 2023).

Moreover, even if short-barreled rifles were presumptively protected, the Supreme Court

8

in *Heller* reasoned that regulation of such weapons was "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *Heller*, 554 U.S. at 627 (quoting 4 Blackstone 148-49 (1769)), and in "accord[] with the historical understanding of the scope of the right." *Heller*, 554 U.S. at 625. Thus, *Bruen*'s requirements are satisfied. *See United States v. Royce*, No. 22-CR-130-DLH, 2023 WL 2163677, at *3 (D.N.D. Feb. 22, 2023) ("With these principles established by *Miller, Heller, McDonald*, and *Bruen* in mind, the Court concludes that short-barrel rifles fall within the historical tradition which prohibits the carrying of dangerous and unusual weapons.").

In reply, Mr. Williams suggests that *Heller*'s discussion of the "dangerous and unusual weapon" exclusion from the Second Amendment is dicta. [Doc. 26, p. 3]. Even if this is the case, *Cox*'s interpretation of *Heller* and its conclusion that short-barreled rifles fall outside of the Second Amendment's protection is not dicta. The Tenth Circuit's published decision in *Cox* is binding on this court. *See Spedalieri*, 910 F.2d at 709 n.2.

Further, lower courts are "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1243 (10th Cir. 2008) (quoting *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996)); *see also United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (Tymkovich, J., concurring). Far from enfeebling *Heller*'s discussion of the "dangerous and unusual weapon" exclusion, *Bruen* discussed the exclusion as an example that the Second Amendment right was "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen,* 142 S. Ct. at 2128. Thus, the court is bound by *Heller*'s statements, even if dicta.

Based on the foregoing, the court is bound by *Heller* as interpreted by *Cox*. Thus,

9

"possession of short-barreled rifles falls outside the Second Amendment's guarantee," and 26 U.S.C. § 5861(d) does not regulate constitutionally protected conduct.  *Cox*, 906 F.3d at 1185-86.  Section 5861(d) is therefore facially constitutional.  Mr. Williams's motion to dismiss in this regard must be denied.

Further, although Mr. Williams purports to bring an as-applied challenge to section 5861(d), Mr. Williams offers no specific argument or facts as to why section 5861(d) is unconstitutional as applied him, as opposed to other defendants.  Thus, Mr. Williams's motion to dismiss is denied insofar as it purports to assert an as-applied challenge to section 5861(d).

## Conclusion

WHEREFORE, the Opposed Motion to Dismiss Indictment [Doc. 19] of defendant Torrance Lamont Williams is denied.

IT IS SO ORDERED this 25th day of September, 2023.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE